# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PRINTERON INC.,** | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 4:13-CV-3025** |
| | § | |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| **BREEZYPRINT CORPORATION and** | § | |
| **U.S. HOSPITALITY PUBLISHERS,** | § | |
| **INC. A/K/A UNIGUEST, INC.** | § | |
| | § | |
| *Defendants.* | § | |

## PRINTERON'S SUPPLEMENTAL RESPONSE IN OPPOSITION
## TO BREEZYPRINT'S MOTION FOR SANCTIONS

## <u>TABLE OF CONTENTS</u>

I.     No Admission Regarding Downloading and Testing ........................................................ 1

II.    PrinterOn's Infringement Analysis Was Reasonable .......................................................... 5

        1.     PrinterOn's contention regarding "communication of translated source data from the network terminal" was (and still is) reasonable and factually supported. ........................................................................................................... 5

        2.     PrinterOn's contention regarding "determine if the network terminal is configured with" was (and still is) reasonable and factually supported. ............... 7

        3.     PrinterOn's contention regarding "authorization password" was (and still is) reasonable and factually supported with evidence............................................. 8

        4.     PrinterOn's contention regarding "decompressing the authorization password" was (and still is) reasonable and factually supported with evidence. ........................................................................................................... 11

        5.     PrinterOn's contention regarding "communicate the authorization password to the destination address" was (and still is) reasonable and factually supported with evidence. ...................................................................... 13

III.    Additional New Arguments Cannot Support the Relief Sought ....................................... 13

     CONCLUSION......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Antonious v. Spalding & Evenflo Companies, Inc.*,
  275 F.3d 1066 (Fed. Cir. 2002)................................................................................4, 5

*Intamin Ltd. v. Magnetar Techns., Corp.*,
  483 F.3d 1328 (Fed. Cir. 2007)................................................................................3, 4

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997)................................................................................5, 3

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004)................................................................................2, 5

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
  286 F.R.D. 661 (S.D. Fla. 2012)................................................................................2

*Schwarz Pharma, Inc. v. Paddock Labs., Inc.*,
  No. 05-832 ADM/JJG, 2007 WL 4436875 (D. Minn. Dec. 18, 2007)....................................4

*Shared Med. Res., LLC v. Histologics, LLC*,
  No. SACV 12-0612, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012)........................................2

*Smart Options, LLC v. Jump Rope, Inc.*,
  No. 12 C 2498, 2013 WL 500861 (N.D. Ill. Feb. 11, 2013)....................................................4

OTHER AUTHORITIES

Rule 11 ................................................................................................................2, 3, 4, 5

Rule 26(c).............................................................................................................................2

PrinterOn Inc. ("PrinterOn") files this supplemental response in opposition to BreezyPrint Corporation's ("BreezyPrint") motion for sanctions against PrinterOn and its attorneys.   This supplemental brief is meant to address BreezyPrint's erroneous allegation of admission, the five disputed claim limitations identified by BreezyPrint in its Reply in Support of Its Motion for Sanctions, Doc. No. 176 ("Reply"), and other new issues raised for the first time in the Reply.   For the reasons stated in PrinterOn's Response in Opposition to BreezyPrint's Motion for Sanctions, Doc. No. 175 ("Response") and below, sanctions are unwarranted.

## I.      No Admission Regarding Downloading and Testing

Throughout its Reply, BreezyPrint misleadingly represents to this Court that PrinterOn ***admitted*** that its counsel did not download and test BreezyPrint's app prior to filing suit.   *See, e.g.*, Reply at 1 ("PrinterOn's counsel even ***admit*** that they did not test BreezyPrint's freely available software before filing this lawsuit" and "the ***admitted*** failure even to *download and use* BreezyPrint's publically downloadable software before filing infringement claims resulted in PrinterOn advancing factual contentions that lacked evidentiary support" (emphasis added)); Reply at 2 ("PrinterOn has ***admitted*** that its counsel failed to test BreezyPrint's freely available software as part of their pre-filing investment before claiming that the software infringes" (emphasis added)); Reply at 5 ("PrinterOn's attorneys ***admit*** they did not even *download* any of BreezyPrint's freely available software, such as its Android/iPhone mobile app or Breezy Connector, at any time before accusing them of infringement" (emphasis added)); Reply at 19 ("PrinterOn appears to make this argument in an attempt to justify the ***admitted*** failure of its counsel to download or test BreezyPrint's freely available software" (emphasis added)); *cf.* Reply at 7 ("PrinterOn cannot offer any adequate explanation as to why its counsel failed to download and test BreezyPrint's freely available software before filing the complaint"); Reply

at 22 ("PrinterOn's counsel failed to download, use or test in any way BreezyPrint's free, publicly available software, which they could have done in a matter of minutes").

To be clear, PrinterOn made no such admission. *See generally* Response. PrinterOn, having presented more than sufficient information in its Response to defeat BreezyPrint's challenge of inadequate investigation, declined to waive its work-product and attorney-client privileges to disclose additional, pre-suit investigation by PrinterOn and its counsel. This suit between BreezyPrint and PrinterOn is ongoing. To waive privilege at this stage of the proceedings would result in a grossly unfair advantage to BreezyPrint. Rule 11 "does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified." FED. R. CIV. P. 11 advisory committee notes.[1]

Regardless, contrary to BreezyPrint's suggestion, the Federal Circuit has not held that the failure to test a publically available product pre-suit warrants sanctions. Instead, as the Federal Circuit has made clear "the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004). An "infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Id.* (affirming lower court finding that Q-Pharma had made a sufficient pre-filing inquiry to determine whether the accused product infringed where the lower court found "although Q-Pharma did not conduct a chemical analysis of Jergens' Curél® CoQ$_{10}$ lotion before

---

[1] The advisory committee notes suggest that the "provisions of Rule 26(c), including appropriate orders after *in camera* inspection by the court, remain available to protect a party claiming privilege or work product protection." However, courts have rejected the approach of submitting the privileged material *in camera*. *See, e.g.*, *QBE Ins. Corp. v. Jorda Enters., Inc.*, 286 F.R.D. 661 (S.D. Fla. 2012); *Shared Med. Res., LLC v. Histologics, LLC*, No. SACV 12-0612, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012). Thus, to avoid an argument of waiver, *see id.*, PrinterOn declined to reveal privileged information in responding to BreezyPrint's Sanctions Motion.

filing suit, its attorneys performed a claim construction analysis and then *relied on Jergens'* *advertising statements*, which suggested that the Curél® CoQ$_{10}$ lotion contained a 'therapeutically effective amount' of CoQ$_{10}$" (emphasis added)).  In *Intamin Ltd.*, the defendant, like BreezyPrint, argued that the plaintiff did not conduct a good faith investigation before filing its complaint because the plaintiff did not obtain and test the accused product.  *See Intamin Ltd.* *v. Magnetar Techns., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).  In addressing the issue, the Federal Circuit noted that *Judin* (cited by BreezyPrint) "did not create a blanket rule that a patentee must obtain and thoroughly deconstruct a sample of a defendant's product to avoid violating Rule 11." *Id.*  Similarly, no blanket rule requires testing prior to suit.  *See id.* (citing *Q-Pharma* for the proposition that the Federal Circuit "did not impose on a patentee a Rule 11 obligation to perform a simple chemical test on a sample to determine its composition").  Importantly, the Federal Circuit affirmed the finding of a reasonable pre-suit investigation where the plaintiff "evaluated the patent portfolio, analyzed the patent's validity, determined the scope of the patent's claims, and performed an infringement analysis." *Id.*  PrinterOn's counsel did just that.  *See* Response Ex. 1 at ¶¶ 4-6 and Ex. 7.

BreezyPrint pretends that had PrinterOn simply downloaded BreezyPrint's mobile app, non-infringement would have been obvious.  BreezyPrint, however, makes no evidentiary showing as to what additional information PrinterOn would have obtained by downloading and using the mobile app.  The downloaded software does not show what translations of content or control data occur on the user device.  Nor does display of printers on a user device explain what authorization passwords are included in the print data package that leaves the end user device and ultimately reaches the destination address.  Simply put, downloading the mobile app does not reveal the source code behind the Breezy system.  The screenshots and videos of the mobile

app and other documentation supporting PrinterOn's pre-suit claim charts and depicting and explaining the use and functionality of the Breezy system more than satisfy the required pre-suit investigation.  BreezyPrint's apparent argument that PrinterOn's counsel did not deconstruct the mobile app[2] is not the law on what constitutes a reasonable investigation.  *See Intamin Ltd.*, 483 F.3d at 1338; *GN Resound A/S v. Callpod, Inc.*, No. 11-04673 SBA, 2013 WL 5443046, at *3-4 (N.D. Cal. Sept. 30, 2013) (rejecting argument that sanctions were warranted because the plaintiff did not analyze or test the accused products); *cf. Schwarz Pharma, Inc. v. Paddock Labs., Inc.*, No. 05-832 ADM/JJG, 2007 WL 4436875, at *2-3 (D. Minn. Dec. 18, 2007) ("Although Schwarz Pharma apparently filed suit without first testing its ANDA products, that alone does not demonstrate that Schwarz Pharma did not conduct a reasonable investigation.").

The authority cited by BreezyPrint does not suggest otherwise.  In fact, *Smart Options*, cited by BreezyPrint expressly notes: "the law does not require that every patent-holder obtain an alleged infringer's product before bringing suit[.]"  *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *5 (N.D. Ill. Feb. 11, 2013).  Moreover, unlike the situation here, the court in *Smart Options* found "Smart Options' failure to avail itself of the easy, inexpensive opportunity to actually test and analyze Jump Rope's product, ***particularly after*** it received Jump Rope's initial Rule 11 motion, is unreasonable."  *Id.* at *7 (emphasis added).  As addressed in PrinterOn's Response, PrinterOn's expert tested and analyzed BreezyPrint's products well before BreezyPrint threatened the sanctions.  *See* Response at 11, 21-22.  The Federal Circuit's decision in *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002) cited by BreezyPrint is likewise inapposite.  There the Federal Circuit reversed the sanctions award and remanded for further proceedings, ordering the trial court to decide

---

[2] Even then, despite 50 plus pages of briefing, BreezyPrint fails to make any evidentiary showing as to how additional pertinent information could be extracted from the downloaded mobile app and how that information allegedly proves non-infringement.

whether the inferences of counsel were reasonable based on the information the attorneys had at the time. *Id.* at 1068-69, 1076. Finally, in *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997), there was "no evidence that Judin or his attorneys 'compared the accused devices with the patent claims' prior to filing the complaint." PrinterOn's counsel, however, performed the comparison as required by Rule 11, including but not limited to analysis and consideration of the BreezyPrint app as evidenced in photographs and videos and advertising documentation. *Compare Q-Pharma*, 360 F.3d at 1302; *with* Response Ex. 1 at ¶¶ 4-6 *and* Ex. 7.

## II.      PrinterOn's Infringement Analysis Was Reasonable

Before filing suit, PrinterOn performed a good faith, informed comparison of the claims to BreezyPrint's products. *See* Exhibit A, Declaration at ¶¶ 3-5. The comparison was reasonable and supported by the existing evidence.

**1.      PrinterOn's contention regarding "communication of translated source data from the network terminal" was (and still is) reasonable and factually supported.**

BreezyPrint argues that PrinterOn's *pre-filing* claim charts lack evidentiary support because PrinterOn fails to even *contend* that there is any "communication of translated source data" from any alleged network terminal because at the time of PrinterOn's Complaint, PrinterOn allegedly identified user devices only as being network terminals—"for example, a mobile device, laptop, tablet, personal computers, etc." Reply at 10. BreezyPrint is wrong for a number of reasons.

First, contrary to BreezyPrint's assertion, the network terminal addressed in PrinterOn's pre-filing claim charts was not limited to user devices. Instead, PrinterOn listed open ended illustrative examples, including a number of additional computing devices (*e.g.*, "etc."), to capture computing devices having the network terminal functionality taught by the PrinterOn patents. *See, e.g.*, Response, Ex. 7 at '093 patent claim chart at 1 & '527 patent claim chart at 1.

Therefore, BreezyPrint is wrong to the extent it suggests PrinterOn asserted only user devices were the claimed network terminals.

Second, even when a network terminal is a user device, BreezyPrint cannot refute the fact that the resource driver on a user device (*e.g.*, a network terminal) having the Breezy app translates control data, which is a form of source data, at the interoperability interface between the Breezy application and the operating system of the user device itself. *Id*. at Ex. 7 at Ex. E at 7 ("E For *Engine*"); Exhibit A, Declaration at ¶ 6.  The control data is then communicated from the user device.  Exhibit A, Declaration at ¶ 6.  At the time the Complaint was filed, it was reasonable for PrinterOn to believe that the translation response of the Breezy Rendering Engine (*e.g.*, the rendering) was based upon a determination of any incompatibilities between the language of the print job from the user device and the language of the selected printer because, for the Breezy Rendering Engine to effect "pixel-perfect document rendering for dozens of file types" (*id*.), it was reasonable to assume the source content and control data communicated from the user device must be compatible with the selected printer.  Therefore, one reasonable inference from the publicly available information at the time PrinterOn filed suit was that the Rendering Engine performs those translations of source data, including translation of control data, to produce translated data in a format suitable for processing by the network resource device.

To further divert attention from the irrefutable fact that translations of control data are occurring at the interoperability interface between the Breezy app and the operating system of the user device itself so that the translated source data is compatible with the selected printer, BreezyPrint argues that the resource driver is "for translating source data to produce translated source data in a format suitable for processing ***by the network resource device***"—not by the

*network terminal*. Reply at 11. BreezyPrint ignores the fact that the Breezy app enables Breezy Rendering control data translations coming from the user device into a format suitable for processing *by the network resource device*—not by the *network terminal*. *See* Exhibit A, Declaration at ¶ 6.

BreezyPrint argues that PrinterOn's frivolous "control data" theory renders meaningless the driver patents' claims requirement of making a *determination* regarding whether the device is configured with the driver. *Id.* BreezyPrint's argument falls apart because the "determination" step is expressly taught by the asserted patents as a determination made between network terminal and printer configurations in a memory table in the system. *See* Plaintiff PrinterOn Inc.'s Opening Claim Construction Brief at 8-11. If the network terminal settings in memory show the Breezy Rendering control data translations are incompatible, the determination step will fail.

## 2. PrinterOn's contention regarding "determine if the network terminal is configured with" was (and still is) reasonable and factually supported.

BreezyPrint argues that PrinterOn provides no evidentiary support for the factual contention in its pre-filing claim charts that, "if the Breezy Cloud determines that the print job formatted with print driver corresponds to the selected printer, the Breezy Cloud has determined that the mobile device is configured with the print driver associated with the selected printer." Reply at 12. Contrary to BreezyPrint's argument, the evidence of this is shown in the exhibits to the pre-filing claim charts. *See* Exhibit A, Declaration at ¶ 7.

Specifically, the Breezy literature shows the Breezy Rendering Engine can be located in the Breezy Cloud. Response, Ex. 7 at Ex. E at 7 ("on device rendering is a losing battle"). Specifically, a reasonable inference from BreezyPrint's statement that "on device rendering is a losing battle" is that the Rendering Engine can be located in the Breezy Cloud. The Rendering

Engine translates print jobs into the language of the selected printer. *Id.* ("The Breezy Rendering Engine is the heart of our rendering process, allowing for picture perfect rendering of dozens of file types."). It was reasonable to assume at the time of filing that, if the Rendering Engine determines that the print job is in the language of the selected printer, no further translation of the print job needs to occur. In that instance, "the Breezy Cloud has determined that the mobile device is configured with the print driver associated with the selected printer."

BreezyPrint further argues that the Driver Patents' claims require "communication of translated data from the network terminal" and PrinterOn's contention that the Driver Patents are infringed by software that only translates after the communication from an end user does violence to the ordinary grammatical understanding of the past tense. Reply at 12, 13. BreezyPrint's argument ignores the translations of control data occurring on the user device, which communicates the "translated" control data from the user device to the Breezy Cloud, which BreezyPrint has never challenged. It also contradicts a reasonable construction of the "communication term." Plaintiff PrinterOn Inc.'s Reply Claim Construction Brief at 11, 12.

**3. PrinterOn's contention regarding "authorization password" was (and still is) reasonable and factually supported with evidence.**

BreezyPrint argues that PrinterOn's *pre-filing* claim charts lack evidentiary support because BreezyPrint explained *post-filing* that its "release code" was never received by the Breezy Connector. Reply at 13-14. This argument fails for several reasons. First, BreezyPrint's conflation of the pre-filing charts with a post-filing "explanation" is irrelevant to PrinterOn's pre-filing due diligence and evidentiary support. Hence, BreezyPrint's post-filing explanation as to a "release code" does not undercut PrinterOn's pre-filing investigation that reasonably concludes the release code, as recited in PrinterOn's pre-filing claim charts, is received by the Connector (*i.e.*, travels with the data package from end user to printer):

8

> The Breezy Cloud provides an authorization password for controlling access of the printer(s) to the print job.  For example, if *a release code or some other authorization password* of a chosen printer and the print job are the same, the printer receives the print job.  Ex. C, p. 11.

*See, e.g.*, Doc. 175, PrinterOn Response, Ex. 7, '188 patent claim chart, pp. 2 & 4 (emphasis added); *see also* Exhibit A, Declaration at ¶ 8.

"Ex. C" referred to in the claim chart excerpt is a series of screen shots from the BreezyPrint app and states that "Breezy provides you with a release code that safeguards your documents until you arrive to start the print job."  *Id.* at Ex. C, p. 1.  The remaining pages of Ex. C show a progression of screen shots from the BreezyPrint app that a user would see on its mobile device.  The progression culminates with a screen shot showing a release code is required at the "W Hotels" before the print job can be printed at that hotel:



*Id.* at 11.

Every publicly available Breezy system architecture diagram of which PrinterOn was aware at the time of suit (namely, the BreezyPrint Enterprise Edition, the BreezyPrint Personal Edition, and the BreezyPrint AirPrint Edition) shows a Breezy Connector in the path between the user and the printer.  *Id.* at Ex. D.  BreezyPrint admits a release code must be present for a print job to occur at a Partner Printing Network printer, such as the W Hotel.  Reply at 14.  Thus, *assuming arguendo* that the release code is not, and has never been, received by the Connector,

the most reasonable inference from the publicly available information at the time PrinterOn filed suit was the release code must travel through the Connector to the Printer Partner Printing Network printer.  After all, that printer must know the release code in order for the release code provided to the user to be verified at that printer.

Second, even if the release code is not received by the Connector, BreezyPrint's post-filing explanation as to a "release code" does not rule out PrinterOn's reasonable pre-filing belief that *some other authorization password* (*i.e.*, not just the release code but "release code or some other authorization password") is part of the data package of the print job and is received by the Breezy Connector, as set forth in PrinterOn's pre-filing claim charts. *See* Response, Ex. 7, '188 patent claim chart, pp. 2 & 4.

Third, after filing the lawsuit and upon review of BreezyPrint's source code, PrinterOn's technical expert, Tipton Cole, identified several authorization passwords other than the release code that satisfy the term authorization password (*e.g.*, "printer_id" and other identifiers set forth in the PICs of a network printing device).  Mr. Cole's findings completely validate PrinterOn's pre-filing belief and claim charts that BreezyPrint's "release code or some other authorization password" satisfies the recited authorization password element.

Finally, BreezyPrint argues that "[i]t is irrelevant whether a release code is an 'authorization password' because a release code is never received in response to any poll request, because it is never received by the Breezy Connector.  That functionality is publicly observable from the use of BreezyPrint's freely available software."  Reply at 14.  (internal citations omitted).  BreezyPrint's argument fails for reasons similar to the reasons previously given.  For example, BreezyPrint's post-filing explanation as to a "release code" does not render unreasonable PrinterOn's pre-filing belief that *some other authorization password* (*i.e.*, not just

the release code but "release code or some other authorization password") is part of the data package of the print job and is received by the Breezy Connector in response to a poll as set forth in PrinterOn's pre-filing claim charts.

As another example, despite 50 plus pages of briefing, BreezyPrint utterly fails to explain how a person would know – from the BreezyPrint mobile app – that the release code does not travel through the Connector. The steps and screens shown to a BreezyPrint app user are laid out in Ex. C to the PrinterOn pre-filing claim charts. *See* Response Ex. 7, claim charts at Ex. C. Those screen shots do not explain how the release code travels to the Printer Partner Printing Network printer. However, the BreezyPrint system architecture diagrams show a Breezy Connector in the transmission path of the print job from the user device to the printer. *Id.* at Ex. D. Therefore, the most reasonable inference and belief from the publicly available information at the time PrinterOn filed suit was the release code travels through the Connector to the Printer Partner Printing Network printer.[3]

**4.    PrinterOn's contention regarding "decompressing the authorization password" was (and still is) reasonable and factually supported with evidence.**

BreezyPrint argues that it is unreasonable for PrinterOn to assume decompression in the BreezyPrint system based on the fact that BreezyPrint documents show print jobs passing through multiple networks. Reply at 15-16. BreezyPrint documents show print jobs are sent from the Breezy apps via HTTPS to the Breezy Cloud, and the Breezy Connector receives the documents via HTTPS. *See* Response, Ex. 7 pre-filing claim charts, Ex. D at 1 and Ex. E at 1 and 4. HTTPS is a well-known protocol providing the capability for

---

[3] BreezyPrint also argues that PrinterOn's counsel was unable to identify a destination address at the *Markman* hearing. Reply at 18. Although PrinterOn did not identify a specific line of code, it did identify the destination address as the polling server software in the Connector. Transcript at 165-166. Moreover, even *assuming arguendo* that a specific line of code is required, that would be impossible to determine pre-filing because PritnerOn did not have access to BreezyPrint's source code.

compression/decompression and encryption/decryption. Exhibit A, Declaration at ¶ 9. BreezyPrint does not, and cannot, dispute this point. BreezyPrint also does not, and cannot, dispute the fact that, if a file (such as a print job) is compressed, it must be decompressed to be useful. *Id.* Therefore, the allegation of compression and decompression along the transmission path of the print job in the Breezy system was reasonable at the time of the pre-filing investigation.

Because BreezyPrint cannot challenge PrinterOn's reasonable assumption that transmission across multiple networks typically uses compression/decompression or that BreezyPrint's use of HTTPS necessarily makes compression/decompression of the print job available, BreezyPrint tries to obscure the issue with an argument referencing the prosecution history of the PrinterOn patents, specifically a rejection based on the *Grantges* reference. Reply at 16-17. BreezyPrint's argument is meritless.

*Grantges* does teach compression/decompression capability generally by virtue of its repeated references to HTTPS (Hypertext Transfer Protocol Secure). *See, e.g.,* PrinterOn's Response to the Password MSJ, Doc. No. 48, Ex. 9 at Fig 1; *see also* PrinterOn's Sur-Response to the Password MSJ, Doc. No. 70 at 10-11. However, *Grantges* fails to teach the decompression set forth in the PrinterOn patent claims, which requires the recited enterprise server perform the recited decompression, *e.g.*, "an enterprise server configured to decrypt and decompress the application data to extract the authorization password, and transmit the application data to the network resource." The USPTO agreed with PrinterOn. *See, e.g.*, Doc. No. 40-4 at PrinterOn 001067-79 (USPTO Notice of Allowability and Examiner's Amendment adding the decompression limitation).

5.    **PrinterOn's contention regarding "communicate the authorization password to the destination address" was (and still is) reasonable and factually supported with evidence.**

BreezyPrint argues that PrinterOn lacked support for communicating the authorization password to the destination address. Reply at 17-18. As previously explained, it was reasonable for PrinterOn to assume the release code or some other authorization password traveled through the only path shown in BreezyPrint's public architecture diagrams. *See supra* at II.3; Exhibit A, Declaration at ¶¶ 6, 10. In each of those paths, the print job passed through the Breezy Connector, which is an example of a destination address. *See supra* at II.3; *see also* Doc. No. 70 at 8-10.

### III.    Additional New Arguments Cannot Support the Relief Sought

For the first time in its Reply, BreezyPrint accuses PrinterOn of "provoke[ing] frivolous discovery disputes" as evidence to support a conclusion of reckless, bad faith conduct. Reply at 22. Since September 2014, BreezyPrint has obstructed PrinterOn's right to 30(b)(6) discovery, which PrinterOn hoped to take before final source code review. With final infringement contention deadlines coming due, the staging of the 30(b)(6) discovery, which BreezyPrint refused to provide in advance of source code review, yet repeatedly represented to the Court was freely available to PrinterOn at all times until PrinterOn requested it to meet Court ordered deadlines, does not amount to a frivolous discovery dispute. These facts cannot support an inference of reckless, bad faith.

Further, BreezyPrint's allegation that PrinterOn's "only *plausible* motive" in filing suit "was to bankrupt its smaller competitor BreezyPrint through overwhelming litigation" is wholly unfounded. Reply at 24. PrinterOn seeks to protect its patent rights, which includes the right to preclude others from practicing its proprietary technology without a license. BreezyPrint does not get a pass on infringement simply because it has been less successful.

13

Finally, BreezyPrint attempts to conflate the standards for obtaining sanctions and substantive relief for tortious interference and argues that the record supports a finding that PrinterOn's agreement with Uniguest is unenforceable as a violation of public policy.  Reply at 25.   BreezyPrint appears to seek judgment on its tortious inference claim and a finding of unenforceability.   These are matters not germane to the issue of sanctions.   Regardless, this record cannot support a finding of reckless, bad faith conduct.   PrinterOn's complaint of infringement against BreezyPrint and Uniguest were well founded and made in good faith.

## CONCLUSION

For the reasons stated herein, and in PrinterOn's Response, the record cannot support the sanctions BreezyPrint seeks.   PrinterOn therefore requests this Court deny BreezyPrint's sanctions motion in its entirety.

4517423

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRINTERON INC., | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO.  4:13-CV-3025 |
| | § | |
| V. | § | JURY DEMANDED |
| | § | |
| BREEZYPRINT CORPORATION and | § | |
| U.S. HOSPITALITY PUBLISHERS, | § | |
| INC. A/K/A UNIGUEST, INC., | § | |
| | § | HONORABLE LEE ROSENTHAL |
| *Defendants.* | § | |

### DECLARATION OF PAUL R. JUHASZ PURSUANT TO 28 U.S.C. § 1746

I, Paul R. Juhasz, declare as follows:

1.    I am a shareholder at the law firm of The Juhasz Law Firm and am lead counsel for Plaintiff PrinterOn Inc. ("PrinterOn") in the above-captioned case.  I have personal knowledge of the facts set forth herein, and, if called upon to do so, I could and would testify competently to them.

2.    I offer this Declaration in support of Plaintiff PrinterOn Inc.'s opposition to Defendant BreezyPrint Corporation's Motion for Sanctions against PrinterOn and its Counsel Paul R. Juhasz, Ray T. Torgerson, Jonathan M. Pierce, The Juhasz Law Firm, P.C., and Porter Hedges, LLP under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's Inherent Authority (the "Sanctions Motion").  I am the attorney-in-charge for PrinterOn's suit against BreezyPrint Corporation ("BreezyPrint").

3.    Prior to filing suit against BreezyPrint, legal counsel for PrinterOn, The Juhasz Law Firm and Porter Hedges LLP, analyzed U.S. Patent Nos. U.S. 6,990,527 ('527); 7,007,093 ('093); 7,249,188 ('188); and 7,827,293 ('293) ("Asserted Patents"), the

complete file histories of the Asserted Patents, and PrinterOn's granted European patents EP 1 260 060 B1 and EP 1262039 B1.  Counsel further compiled and studied publicly available technical literature on BreezyPrint's and Uniguest's products, which included text descriptions of how they function, drawings demonstrating the flow of information, and videos uploaded to YouTube by BreezyPrint and third parties showing certain screen shots and operations using BreezyPrint's downloadable smartphone application.

4.      Using this information, Counsel drafted initial claim charts.  Those claim charts mapped representative claims from the Asserted Patents against BreezyPrint's and Uniguest's products and were supported by referenced Exhibits A-E drawn from publicly available information, described in more detail above.  These claim charts, prepared before the action was filed, were a result of a good faith, informed comparison of the claims of the Asserted Patents against BreezyPrint's and Uniguest's products and were supported by BreezyPrint's publically available information and reasonable inferences therefrom.

5.      The work that went into developing due diligence claim charts for both BreezyPrint and Uniguest was extensive.

6.      Before filing suit, Counsel specifically considered, among other things, whether the Breezy system met the "communication of translated source data from the network terminal" limitation.  Counsel in considering network terminal pre-suit did not limit the term to user devices.  Nonetheless, even when a network terminal is a user device, counsel reasonably inferred from the publicly available information that the resource driver on a user device (*e.g.*, a network terminal) having the Breezy app translates control data, which is a form of source data, at the interoperability interface between the Breezy application and the operating system of the user device itself.  The control data is

then communicated from the user device.  Counsel further reasonably inferred from the publicly available information that at the time the Complaint was filed, it was reasonable for PrinterOn to believe that the translation response of the Breezy Rendering Engine (*e.g.*, the rendering) was based upon a determination of any incompatibilities between the language of the print job from the user device and the language of the selected printer because, for the Breezy Rendering Engine to effect "pixel-perfect document rendering for dozens of file types", it was reasonable to assume the source content and control data communicated from the user device must be compatible with the selected printer.  Therefore, one reasonable inference from the publicly available information at the time PrinterOn filed suit was that the Rendering Engine performs those translations of source data, including translation of control data, to produce translated data in a format suitable for processing by the network resource device.

7.    Before filing suit, Counsel specifically considered, among other things, whether the Breezy system met the "determine if the network terminal is configured with" limitation. Based on the evidence as cited in the pre-suit claim charts, Counsel concluded that the Breezy system met this claim limitation.

8.    Before filing suit, Counsel specifically considered, among other things, whether the Breezy system met the "authorization password" limitation.  Based on the publically available information, Counsel determined that the Breezy Cloud provides an authorization password for controlling access of the printer(s) to the print job.  For example, if a release code or some other authorization password of a chosen printer and the print job are the same, the printer receives the print job.  Exhibit C to the pre-suit claim charts is a series of screen shots from the BreezyPrint app and states that "Breezy

provides you with a release code that safeguards your documents until you arrive to start the print job."  The remaining pages of Exhibit C show a progression of screen shots from the BreezyPrint app that a user would see on its mobile device.  The progression culminates with a screen shot showing a release code is required at the "W Hotels" before the print job can be printed at that hotel:



Every publicly available Breezy system architecture diagram of which Counsel was aware at the time of suit (namely, the BreezyPrint Enterprise Edition, the BreezyPrint Personal Edition, and the BreezyPrint AirPrint Edition) shows a Breezy Connector in the path between the user and the printer.  Thus, even assuming arguendo that the release code is not, and has never been, received by the Connector, the most reasonable inference from the publicly available information at the time PrinterOn filed suit was the release code must travel through the Connector to the Printer Partner Printing Network printer.  After all, BreezyPrint's publicly available information establishes that the printer must know the release code in order for the release code provided to the user to be verified at that printer.

9.      Before filing suit, Counsel specifically considered, among other things, whether the Breezy system met the "decompressing the authorization password" limitation.  Counsel determined that BreezyPrint documents show print jobs are sent from the Breezy apps

via HTTPS to the Breezy Cloud, and the Breezy Connector receives the documents via HTTPS.  This can be seen in Exhibit D at page 1 and Exhibit E at pages 1 and 4 to the exhibits supporting the pre-suit claim charts.  HTTPS is a well-known protocol providing the capability for compression/decompression and encryption/decryption.  If a file (such as a print job) is compressed, it must be decompressed to be useful.  The inference of compression and decompression along the transmission path of the print job in the Breezy system was reasonable based on the available public information.

10.     Before filing suit, Counsel specifically considered, among other things, whether the Breezy system met the "communicate the authorization password to the destination address" limitation.  Counsel determined that this limitation was also met by the Breezy system.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 30, 2015 in Houston, Texas.

Paul R. Juhasz

4517384